## JAMES TEAGUE v. JOE H. GREEN ET AL.

### No. 866.

1. **Scrap Land.**—Vacant lands in tracts of less than 640 acres in organized counties were appropriated and set aside for sale by Acts of the Sixteenth Legislature, chapter 52 (approved July 14, 1879), and of the Seventeenth Legislature, chapter 32 (approved March 11, 1881). The lands were withdrawn from sale January 22, 1883, by Act of the Eighteenth Legislature, chapter 3. By Act of the Twentieth Legislature, chapter 80 (approved March 29, 1887), they were again offered for sale. After the original appropriation they were not subject to location as public lands.

2. **Veteran Land Certificates.**—The veteran land certificates issued under chapter 45, Acts Seventh Legislature, General Laws, page 35 (approved March 15, 1881), might be located upon any of the public domain. But lands appropriated by the Act of July 14, 1879, chapter 52, Sixteenth Legislature, were not of the public domain, and were not subject to location under said veteran certificates. Such location was void.

ERROR from Coleman. Tried below before Hon. W. J. WINGATE.

*Sims & Snodgrass,* for plaintiff in error.—The court erred in not rendering judgment for plaintiff, James Teague, for the land in controversy in said suit, and in rendering judgment for defendants for said land and costs of suit. Because plaintiff shows a good and perfect legal and equitable title to said land, and superior and paramount title to the defendants' claim thereto, in this: plaintiff showed that he and those whose estate he has made a valid location, survey, and appropriation of the land in controversy, by location of a valid land certificate thereon, and a survey and return of the field notes to the General Land Office in due time, in manner and form as required by law, prior to defendants' claim thereto. Acts 17th Leg., p. 35; Railway v. McGehee, 49 Texas, 481.

*Randolph & Webb,* for defendants in error.—1. The location of a land certificate upon land reserved for other purposes is illegal. 2 Sayles' Civ. Stats., art. 3976a (1–10); 2 Sayles' Civ. Stats., arts. 3976b, 3976c, 3976c (2), 3976c (3); Gammage v. Powell, 61 Texas, 629; Kimmell v. Wheeler, 22 Texas, 77; Sherwood v. Flemming, 25 Texas

Supp., 427; Woods v. Durrett, 28 Texas, 430; Garrett v. Weaver, 70 Texas, 463.

2. Plaintiff in error having shown an illegal location upon the land in controversy, the patent of defendants in error to said land was prima facie title, and the court did not err in rendering judgment for the defendants in error. Mitchell v. Bass, 26 Texas, 372; Jenkins v. Chambers, 9 Texas, 167; Johnson v. Eldridge, 49 Texas, 520; Miller v. Brownson, 50 Texas, 591; Fuller v. Coddington, 74 Texas, 334.

COLLARD, ASSOCIATE JUSTICE.—Action of trespass to try title by plaintiff in error against defendants in error, Joe H. Green and Willis S. Green, for a tract of seventy-one acres of land. Plea of not guilty, and answer by defendants claiming the land. Trial by the court without a jury, and judgment for defendants for the land, from which the writ of error is sued out.

Plaintiff claims title to the land by virtue of the location of veteran donation certificate number 1111, issued by the Commissioner of the General Land Office, for 640 acres of land, to Mrs. Henrietta Berry, under the Act of March 15, 1881, granting certificates to surviving soldiers of the Texas revolution and surviving signers of the Declaration of Independence, and the surviving widows of such soldiers and signers, and to the widows of persons who fell at the Dawson massacre.

The certificate was duly located on the land as described in the petition, February 6, 1885, and field notes returned to the General Land Office, April 7, 1885. Plaintiff is shown by the evidence to be the owner of the title to the land so located.

The land is what is known as "scrap land." The field notes of the survey are as follows: Beginning at a stone mound, northwest corner John Hunter survey number 1, bearings called for; thence north 350 varas northeast corner of Samuel Sprague number 748; thence east with south boundary line of John Barnecoat survey number 504, 800 varas, cross lake 1154 varas, stone in west boundary line of Jesse Chadoin survey number 62, and 86 varas west of southeast corner of survey number 504; thence south, crossing lake, 350 varas, stone mound, northeast corner of John Hunter survey number 1, bearings called for; thence west 48 varas, cross county line of Brown and Coleman Counties, 1154 varas to the beginning.

The plat and field notes in evidence show that the seventy-one acres so located were at the time of the survey bounded on the south by the John Hunter survey, on the west by the Sam Sprague, on the north by the John Barnecoat, and on the east by the Jesse Chadoin.

Defendants claim the land by patent to them of date October 27, 1890, which shows that it had been purchased and fully paid for in ac-

cordance with an act approved March 29, 1887. Sayles' Civ. Stats., art. 3976c, secs. 1–7.

Plaintiff in error, by assignment of error, insists that the judgment of the court below should be reversed, because he has shown a good title to the land, paramount to that of defendants, by location of a valid certificate, survey, and return of field notes to the Land Office, as required by law.

*Opinion.*—There was no error in the judgment. The land was not subject to the location made by virtue of the certificate. The vacant land, being less than 640 acres in an organized county, was already appropriated and set aside for sale, the proceeds of which one-half were to be applied to the public free schools of the State, and the other half to the payment of the bonded debt of the State. Acts of July 14, 1879, and July 1, 1881 (Sayles' Civil Statutes, 3976a, sections 1–10, inclusive; Act of January 22, 1883 (Sayles' Civil Statutes, article 376b); Act of July 4, 1887 (Sayles' Civil Statutes, article 3976c, sections 1–7, inclusive).

The Act of 1883 withdrew the land from sale, but it was provided that it should not be returned to the public domain, but should still be reserved for the purposes for which it was originally set apart by the Legislature in 1879 and 1881. It was put upon the market for sale again by the Act of 1887, preserving the reservations and donations intact for the benefit of the public free schools and the public debt. Gammage v. Powell, 61 Texas, 630.

The Act of 1881 (General Laws 1881, page 35), granting land certificates to the surviving soldiers of the Texas revolution, signers of the Declaration of Independence, their widows, and to widows of those who fell at the Dawson massacre, provided that such certificates might be located upon any of the *public domain.* But the land upon which the certificate in this case was located was not public domain; it was severed from the public domain and appropriated, as we have before seen. Day Company v. The State, 68 Texas, 526.

We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered May 16, 1894.